JOHN A. DIXON, Jr., Judge.
This is a damage suit arising out of a boat accident. Plaintiff sues his vendor. The boat was a rig designed for water skiing. Plaintiff claims that the accident was caused by a failure in the rigging installed by the defendant for the purpose of steering the boat. After the case was tried, there was judgment rejecting the demands of the plaintiff, from which he appeals. Plaintiff specifically pleads negligence in rigging the boat, and in addition, seeks to invoke the doctrine of res ipsa loquitur.
The particular failure claimed to have caused the accident was an improperly installed “S” hook. The boat had a steering wheel which turned a drum, around which' was wrapped a cable. The two ends of the cable followed a channel to the transom of the boat. The outboard motor was mounted' on the transom. The cables were suspended by pulleys at the transom. From each corner of the transom the ends of the steering cable ran to a metal plate which was, ini turn, attached to the forward chassis of the outboard motor. On each cable there was a spring tension device designed to keep the cables taut. The cables were connected to the metal plate on the motor by a metal hook in the shape of an “S”. All the rigging was installed by the defendant at the time the boat was sold to the plaintiff. Plaintiff contends that these “S” hooks should have been-clamped shut at the time of installation, but were left unclamped in such a way that one *567 “S” hook became disconnected, causing the plaintiff to lose control of his boat and crash into a bulkhead near the bank of a bayou where the plaintiff was operating his boat.
The accident occurred, not on the first excursion on which the plaintiff used his boat, but after the plaintiff had used his vessel on weekends five or six times without mishap. The boat was purchased April 28, 1959; the accident occurred July 12, 1959.
The defense was that the boat was properly rigged, and the accident was caused by the plaintiff’s own negligence in the operation of the boat
The evidence showed that the accident occurred in a bayou about 75 or 100 feet wide where the plaintiff and others were engaged in water skiing activity. Plaintiff contends that, while traveling through the water, just as a water skier whom he had been pulling had fallen, and while the plaintiff was attempting to avoid another water skier in the water near him, the steering mechanism became ineffective, the boat began to “fishtail” and slammed into the cypress bulkhead lining the bayou.
The plaintiff was following another boat driven by a Mr. Gonzales, both heading downstream, and both attempting to tow water skiers. The water skier being towed by the Gonzales boat fell. The skier being bowed by plaintiff’s boat also fell. Mr. Gonzales signaled the presence of his fallen skier to the plaintiff, who swerved his boat to the left to avoid the skier, bringing his boat to within ten or twelve feet of the cypress piling near the bank on his left. When the plaintiff was heading toward the piling at an angle of about 20 to 30 degrees, and at about 20 to 25 miles per hour, he attempted to turn his boat to the right to avoid the obstacle. At this point, the plaintiff claimed his boat went out of control and ■ did not respond to the steering wheel. Other witnesses testified that the motor did respond, and plaintiff skidded into the piling.
No witness was able to testify as to exactly what part of the steering controls, if any, broke or became defective immediately prior to the accident. The plaintiff was carried to a doctor immediately after the accident. The history of the doctor who treated the plaintiff revealed no complaint about the failure of the steering mechanism. A few days after the accident, when the plaintiff had returned to New Orleans, the plaintiff told a representative of the defendant that the accident occurred when he swerved to avoid hitting a water skier and ran into the wooden bulkhead. The plaintiff did not mention any failure in the rigging or steering mechanism at that time to the defendant’s representative.
Plaintiff’s examination of the boat after he returned from receiving medical treatment following the accident, according to his testimony on the trial of the case, revealed that one of the “S” hooks which had attached one of the steering cables to the motor was missing. The trial court must have concluded that this “S” hook became lost as a result of the accident when the boat slammed sidewise into the bulkhead, and was not a cause of the accident.
A review of the testimony adduced on the trial of the case does not indicate any erroneous conclusion by the trial judge. In addition, the “S” hooks complained of by the plaintiff are in full view to anyone in the boat, and are not such a hidden device that plaintiff could not be expected to see them every time he looked in the direction of his motor. There is no testimony from which we can conclude that the hookup of the steering mechanism itself was inherently dangerous.
Plaintiff’s attempt to invoke the doctrine of res ipsa loquitur must necessarily fail. Since after the accident one “S” hook was missing, the plaintiff would have the burden placed on the defendant to show that it was free from negligence in rigging the boat. We think the mere absence of the “S” hook after the accident does not cast that burden upon the vendor of the boat, be *568 cause it does not necessarily indicate that the accident would not have happened except for negligence of the defendant. For several weekends before the accident, the boat had operated properly and had performed satisfactorily without accident. The testimony did not indicate any different type of stress and strain on the steering mechanism at the time of the accident. The boat was under complete control of the plaintiff, its operator, immediately prior to the accident.
We agree with the trial court that the cause of the accident was the plaintiff’s own operation of the boat at a considerable speed in close quarters. The judgment appealed from is affirmed, at appellant’s cost.